IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY PENNINGTON, ET AL. | : CIVIL ACTION |
| | : |
| v. | : |
| | : |
| WELLS FARGO BANK, N.A. | : |
| *SUCCESSOR TO WELLS FARGO HOME* | : |
| *MORTGAGE*, ET AL. | : NO. 11cv2896 |

MEMORANDUM

YOHN, J.                                                                                                                                                                                                 October 19 , 2012

      Jeffrey and Nikki Pennington ("the Penningtons") bring this action against Wells Fargo Bank, N.A. ("Wells Fargo") and 10,000 John Does (Investors). Currently pending is Wells Fargo's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for a more definite statement under Rule 12(e). In response to the motion to dismiss, the Penningtons request that the case be bifurcated and that they be allowed to amend their complaint. For the reasons set forth below, Wells Fargo's motion to dismiss is granted with respect to all claims except their claim for quiet title.

I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

      The Penningtons claim to be the rightful owners of real property located at 4711 Greene St., Philadelphia, Pennsylvania, and dispute whether Wells Fargo is the true holder of the Penningtons' residential mortgage and note. (Compl. ¶¶ 1, 12.) They allege that on August 3, 2010, they sent a qualified written request to Wells Fargo, pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, seeking assurance from Wells Fargo that it would be able to convey good title to the Penningtons after a tender of the full balance due on their

outstanding mortgage. (Compl. ¶ 10; *id*. Ex. 1.) According to the Penningtons, Wells Fargo failed to produce the requested documents within the statutorily allowable time frame.[1] (*Id.*) Because of Wells Fargo's non-response, the Penningtons sent a letter, entitled "Notice of Default, Opportunity to Cure" ("First Notice"), to Wells Fargo on October 22, 2010. (*Id.* ¶ 11; *id*. Ex. 8.) In their First Notice, the Penningtons demanded that Wells Fargo provide them with the "original wet ink signature promissory note" in order to determine if Wells Fargo was the true servicer of their mortgage. (*Id*. Ex. 8.) Then, on November 2, 2010, less than a month after the Penningtons sent the First Notice to Wells Fargo, Nikki Pennington granted the property located at 4711 Greene St., which had been held solely in her name, to both "Jeffrey Pennington and Nikki Pennington" via a quitclaim deed.[2] (*Id*. Ex. 7.)

The Penningtons allege that on January 28, 2011, they sent a second letter, entitled "Notice of Conditional Offer to Tender Full Amount" ("Offer Letter"), to Wells Fargo, in which the Penningtons offered to pay an amount of $142,509.73 to satisfy the balance of the note.[3]

---

[1] Under 12 U.S.C. § 2605(e), once a "servicer of a federally related mortgage loan receives a qualified written request from the borrower (or any agent of the borrower) for information relating to the loan," the servicer has twenty days in which to acknowledge the written request from the borrower, and sixty days in which to respond to the inquiry. 12 U.S.C. § 2605(e)(1)(A). Damages are available to a borrower should a servicer fail to comply with the statute. A borrower may seek the following: actual damages; "additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [the statute], in an amount not to exceed $1,000"; costs and reasonable attorneys fees. § 2605(f)(1), (3).

[2] The quitclaim deed lists the grantor of the property as "Nikki T. Frazier-Pennington." In their opposition to the motion to dismiss, the Penningtons state that plaintiff Nikki Pennington is the same person as Nikki Frazier-Pennington. (Pls. Opp'n to Mot. to Dismiss ¶ 14.) This was confirmed by Jeffrey Pennington at oral argument on October 16, 2012.

[3] The Penningtons claim that this amount is in excess of the actual amount owed to Wells Fargo for the balance of the note. (Compl. Ex. 1.) They state that Wells Fargo informed them that the remaining balance under the note was $138,369.50. (*Id.*) The Penningtons were offering

(Compl. ¶ 14.; *id*. Ex. 1)  The Offer Letter proposed a meeting at 10 a.m. on March 1, 2011, "to tender the full payment upon proof of ability to convey to us clear title." (*Id.* ¶ 14.)  The Offer Letter further stated that the meeting was to take place at 4907 Wayne Ave, Philadelphia, Pennsylvania.  The Penningtons claim that Wells Fargo did not attend the scheduled meeting; subsequently, the Penningtons allege that Wells Fargo was then in default of its obligations under the mortgage due to its non-performance.  (*Id.* ¶ 15.)  The Penningtons followed with a third letter, entitled "Second Notice of Default with Opportunity to Cure," which also included a second tender offer.  (*Id.* ¶ 16; *id*. Ex. 2.)  Again, the Penningtons allege that Wells Fargo did not respond.  (*Id.*)

On March 25, 2011, the Penningtons filed a complaint, entitled "Complaint to Quiet Title," with the Court of Common Pleas of Philadelphia County.  Wells Fargo removed the case to the United States District Court for the Eastern District of Pennsylvania.  Thereafter, Wells Fargo filed a motion to dismiss for insufficient service of process pursuant to Rule 12(b)(5) and for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  On May 16, 2012, this action was reassigned to me from the docket of the late Honorable Louis H. Pollak.  On May 21, 2012, I denied Wells Fargo's motion to dismiss based on Rule 12(b)(5) because the Penningtons cured their insufficient service of process.  On October 16, 2012, I held oral argument on this motion.  I issued an order the following day, partially resolving some of the issues raised in Wells Fargo's motion to dismiss.  I will now address the balance of the motion to dismiss under Rule 12(b)(6).

---

to tender an amount in excess of the balance "to expedite the matter" and "obtain clear title." (*Id.*)

## II.     STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must contain sufficient factual matter to be plausible on its face. *See id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; a sheer possibility that a defendant acted unlawfully is not sufficient. *Id.*

When faced with a motion to dismiss, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint[,] and matters of public record." *Pension Benefit Guar. Corp. V. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Third Circuit has held, however, that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* If such practice were not allowed, "a plaintiff with a legally deficient claim could survive a motion to dismiss by failing to attach a dispositive document on which it relied." *Id.* Therefore, I will consider the mortgage (which is also a matter of public record) and note attached to Wells Fargo's motion to dismiss.

### III.   DISCUSSION

The Penningtons bring six counts against Wells Fargo and the additional 10,000 John Does (Investors).[4]  I will address each count in turn.

#### A.   Count I: Constructive Fraud

In count I, the Penningtons allege that Wells Fargo's conduct amounts to constructive fraud.  (Compl. ¶ 19.)  In support of this claim, the Penningtons assert that Wells Fargo's actions "meet all of the elements of fraud, including justifiable reliance by the courts and the Plaintiffs . . . on the [defendants'] false statements . . . ." (*Id.* ¶ 22.)  They further allege that "[d]efendants have intentionally and knowingly submitted false pleadings and have caused the courts to rely upon those false pleadings, to the detriment of the Plaintiffs [and the courts]" (*id.* ¶ 23); "defendants have intentionally and knowingly induced the Plaintiffs to accept mortgages based on false appraisal rates" (*id.* ¶ 23); and "defendants violated State laws which were specifically enacted to protect such abusive, deceptive, and unfair conduct by Defendants" (*id.* ¶ 24).  In addition, the Penningtons allege that Wells Fargo is in violation of the following federal criminal laws: 18 U.S.C. § 1341 (Mail Fraud); 18 U.S.C. § 1343 (Wire Fraud); 18 U.S.C. § 1344 (Bank Fraud); 18 U.S.C. § 1951 (Extortion); 18 U.S.C. § 1952 (Racketeering); 18 U.S.C. § (Money Laundering); 18 U.S.C. § 2314 (Transportation of Stolen Goods); and 18 U.S.C. § 2315 (Receipt of Stolen Goods).

To begin, I reject all claims based on alleged violations of federal criminal law.  The

---

[4]The complaint is devoid of any factual content that would allow the court to draw a reasonable inference that the 10,000 John Does (Investors) were liable for the asserted claims. Furthermore, at oral argument the Penningtons were unable to provide any additional information to support their claims against the 10,000 John Does (Investors).  Accordingly, I issued an order on October 17, 2012, dismissing the John Does (Investors) from this suit.

federal statutes that the Penningtons cite do not provide them with a private cause of action. *See, e.g., Jones v. TD Bank*, 468 F. App'x. 93 (3d Cir. 2012) (stating federal mail fraud statute did not provide plaintiff with private right of action); *Addlespurger v. Corbett,* 461 F. App'x. 82 (3d Cir. 2012) (stating no private cause of action for wire fraud); *Beale v. Rubin & Rothman, LLC,* No. 08-4279, 2009 WL 1916322 (D.N.J. June 29, 2009) (stating no private right of action for bank fraud); *Brookhart v. Rohr*, 385 F. App'x 67 (3d Cir. 2010) (stating Hobbs Act does not give rise to private cause of action); *Barrett v. City of Allentown*, 152 F.R.D. 50 (E.D. Pa. 1993) (stating no civil action for violations of 18 U.S.C. §§ 1952 or 1956); *Boyd v. Wilmington Trust Co.*, 630 F. Supp. 2d 379 (D. Del. 2009) (acknowledging no private cause of action for violation of 18 U.S.C. § 2315). Therefore, these allegations are dismissed with prejudice.

  I now turn to the Penningtons' claim of constructive fraud. In Pennsylvania, a claim of constructive fraud "requires a false statement (or omission) on which the other party acts to his injury, without the element of dishonest intent." *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 784 (E.D. Pa. 2008). In addition, when alleging constructive fraud a plaintiff is required to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy this standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

  Here, the Penningtons have failed to meet the strict pleading standard of Rule 9. The reason behind the heightened requirement is to "place the defendant on notice of the 'precise

misconduct with which [it is] charged.'" *Id.* (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004)). The Penningtons' general claims that Wells Fargo made false statements or submitted false pleadings upon which the Penningtons relied to their detriment do not provide Wells Fargo with the appropriate notice of the "precise misconduct with which [it is] charged." *Id.* These allegations are little more than unsupported legal conclusions that I am not bound to accept. Furthermore, at oral argument I gave the plaintiffs an opportunity to articulate the factual basis for their claim of constructive fraud. Their only response was an allegation that Wells Fargo did not disclose from whom it received the money lent to Nikki Pennington, an obvious irrelevancy. This claim is therefore dismissed with prejudice, as any amendment to the complaint on this basis would be frivolous and futile.

   B.   **Count II: Conspiracy, Unjust Enrichment, and Emotional Distress**

   Similarly to count I, the Penningtons allege multiple infractions on the part of Wells Fargo in count II. Specifically, the Penningtons state that "the [defendants'] scheme alleged herein constitutes unjust enrichment" (Compl. ¶ 44); the "[defendants'] scheme alleged herein intentionally caused emotional distress to the Plaintiffs" (*id.* ¶ 45); and the "[d]efendants combined and conspired with one another to form an association-in-fact to commit the acts alleged herein" (*id.* ¶ 46). The Penningtons fail to provide any factual basis, however, as to exactly how Wells Fargo's actions meet the elements of any of these claims, and the court cannot settle for unsupported legal conclusions or allegations. *See Mayer v. Belichick*, 605 F.3d 223, 229-30 (3d Cir. 2010) ("[A] court is *not required to accept legal conclusions* alleged in the complaint. The pleading *must contain sufficient factual allegations* so as to state a facially plausible claim for relief." (emphasis added) (citations omitted)). And while the court also does

not have to accept a "formulaic recitation of a cause of action," *Twombly*, 550 U.S. at 555, the Penningtons' complaint fails to even offer as much. In addition, the plaintiffs were unable to offer any factual support for their claims at oral argument that would turn them into plausible claims. The claims are dismissed with prejudice, as any attempt at amendment based on facts alleged at argument would be frivolous and futile.

        **C.**        **Count III: Violation of the FDCPA**

Here, the Penningtons argue that Wells Fargo is in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, because it has submitted "fraudulent pleadings in federal courts and in State courts," which constitutes "misrepresentation and deceit" under the FDCPA. (Compl. ¶ 53.) While Wells Fargo failed to provide argument against count III in its motion to dismiss, it did request dismissal of the entire complaint, and as such I will addresses count III as part of that request. (Mot. to Dismiss 10.)

Count III fails because it contains insufficient factual allegations. To state a claim under the FDCPA, a plaintiff must establish that "(1) he or she is a 'consumer' who is harmed by violations of the FDCPA; (2) the 'debt' arises out of a transaction entered into primarily for personal, family, or household purposes; (3) the defendant collecting the debt is a 'debt collector'; and (4) the defendant has violated, by act or omission, a provision of the FDCPA." *Berk v. J.P. Morgan Chase Bank, N.A.*, No. 11-2715, 2011 WL 4467746, at *3 (E.D. Pa. Sept. 26, 2011) (citing 15 U.S.C. § 1692a-o).

In their complaint, the Penningtons fail to state how Jeffrey Pennington qualifies as a "consumer" under the first element, defined as "any natural person *obligated or allegedly obligated to pay any debt.*" 15 U.S.C. § 1692a(3) (emphasis added). Nowhere in the complaint

does it state that Jeffrey Pennington ever signed any loan documents associated with the note and mortgage for the property. Furthermore, Jeffrey Pennington's signature on the quitclaim deed did not make him an obligor under the note; instead, Nikki Pennington–the borrower–remained the only obligor, and therefore, the only consumer. *See McDaniel v. South & Associates, P.C.*, 325 F. Supp. 2d 1210, 1220-21 (D. Kan. 2004). For these reasons, with respect to Jeffrey Pennington the claim is dismissed with prejudice.

The Penningtons conclusorily assert elements three and four by stating, "Wells Fargo Home Mortgage is an attorney for debt buyers and is attempting to collect and therefore is debt collectors [sic] under the FDCPA" and that their actions constitute "'fraud and deceit' under the federal [FDCPA]." (*Id.* ¶¶ 50, 53.) Wells Fargo Home Mortgage, however, is not a separate entity apart from Wells Fargo Bank, N.A. At oral argument, the parties stipulated to the fact that Wells Fargo Home Mortgage merged into Wells Fargo Bank, N.A. in May of 2004, prior to the events in question here. Wells Fargo Bank, N.A. is the original mortgagee on the mortgage and the original payee and current holder of the note, a determination that was also made clear at oral argument.

In order to qualify as a "debt collector" under the FDCPA, one must be engaged in a "business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be *owed or due another*." § 1692a(6) (emphasis added). The statute further states that the term "debt collector" does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." § 1692a(6)(A). The Third Circuit has noted that "[c]reditors—as opposed to 'debt collectors'—generally are not subject to the FDCPA." *Police*

*v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000).  "The [FDCPA] does not apply to persons or businesses collecting debts on their own behalf."  *Staub v. Harris*, 626 F.2d 275, 277 (3d Cir. 1980).  As the original lender of the money to Mrs. Pennington and the entity to whom a debt is owed, Wells Fargo Bank, N.A. qualifies as a creditor, not a debt collector.  Accordingly, this claim by Nikki Pennington is dismissed with prejudice.

        D.        **Count IV: Deprivation of Constitutional Rights**

In count IV, the Penningtons argue that "[p]roperty is a privilege or immunity secured by the Constitution and laws," and Wells Fargo's attempt to "seize and convert [the property] will deprive [the Penningtons] of their right to property without Due Process and Equal Protection of the laws." (Compl. ¶¶ 56-57.)  These statements suggest that the Penningtons believe their equal protection and due process rights are being violated under both the U.S. Constitution and the Pennsylvania Constitution.  Their claim is not valid under either.

"As a general matter the protections of the Fourteenth Amendment do not extend to 'private conduct abridging individual rights.'" *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 448 U.S. 179, 191 (1988) (quoting *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722 (1961)).  "The Amendment simply erects no shield against the conduct of private actors no matter how unfair the conduct may appear to the plaintiff." *Jones v. Goodman*, No. 92-7560, 1992 WL 97356, at *1 (E.D. Pa. May 1, 1992) (citing *Tarkanian*, 488 U.S. at 191).  And while there are occasions when a private actor's conduct may constitute state action when "there is 'such a close nexus between the State and the challenged action' that seemingly private behavior

'may be fairly treated as that of the State itself,'" this is not such an occasion.[5]  *Brentwood Acad. v. Tenn. Secondary Sch. Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974).

Similarly, the Penningtons' claim fails under Pennsylvania constitutional law.  "It has been recognized that Article I, sections 1, 9 and 26 combine to provide the counterpart of the federal due process and equal protection provisions."  *Gondelman v. Commonwealth*, 554 A.2d 896, 903 n.11 (Pa. 1989).  "[T]hose rights enumerated in the Declaration of Rights are deemed to be inviolate and may not be transgressed *by government*."  *Id.* at 904 (emphasis added).  As a private actor, Wells Fargo's conduct does not violate Pennsylvania's due process or equal protection provisions.  Accordingly, count IV is dismissed with prejudice.

### E.  Count V: Violation of 13 Pa. Cons. Stat. § 3603(b)

The Penningtons claim that Wells Fargo is in violation of title 13, section 3603(b) of the Pennsylvania Commercial Code.  Section 3603(b) states:

> If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates.

13 Pa. Cons. Stat. § 3603(b) (1992).  The Penningtons read this statute as discharging the balance of their mortgage because of their offer of full tender on the note and Wells Fargo's non-acceptance.  Their reading is incorrect.

The statute states that when a tender of payment is made to a party with the authority to

---

[5] Wells Fargo is a publicly traded corporation, not a government entity.  Furthermore, there is nothing in the Penningtons' complaint to suggest that Wells Fargo, as a private entity, was acting under color of law.

enforce the instrument, and such tender is subsequently refused, then "there is discharge, to the extent of the amount of the tender, of the obligation *of an indorser or accommodation party . . .* to which the tender relates." § 3603(b) (emphasis added). An "indorser" is defined as a person who provides a "signature, other than that of a signer as maker, drawer or acceptor . . . for the purpose of negotiating the instrument, restricting payment of the instrument or incurring indorser's liability on the instrument . . . ." *Id.* § 3204(a). An "accommodation party" is one who "signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument." *Id.* § 3419(a).

Here, the plaintiffs do not allege in their complaint that they are either indorsers or accommodation parties. The Penningtons do not offer that they signed the original note in order to negotiate the instrument for any reason other than a traditional mortgage payment. Nor do they claim that they signed the note as sureties to the original debt, as would be the case of an accommodation party. In fact, the Penningtons conceded at oral argument that Nikki Pennington is the original obligor under the note and mortgage with Wells Fargo. (*See also* Pls.' Opp'n to Mot. to Dismiss ¶ 14) ("As true owners of the property we were denied full disclosure of all the details of the alleged mortgage that Wells Fargo purports to have lent to Plaintiff Nikki (Frazier) Pennington.") Therefore, because the Penningtons are neither indorsers nor accommodation parties, count V fails as a matter of law and will be dismissed with prejudice.[6]

---

[6]Questioning at oral argument elicited the Penningtons' true purpose behind this cause of action: to void the mortgage. Mr. Pennington argued that under 13 Pa. Cons. Stat. § 3603(b), their offer to pay the mortgage in full, and Wells Fargo's alleged refusal of that offer, voided the mortgage. It did not. Furthermore, Mr. Pennington claimed that the damages he incurred through Wells Fargo's refusal to accept payment include the money he would have saved through the lower interest rate he would have received by his independent lender. Pennsylvania law does allow for the discharge of interest in situations similar to the Penningtons'. Under 13 Pa. Cons.

F. **Count VI: Violation of 13 Pa. Cons. Stat. § 3301**

In count VI, the Penningtons allege that "[d]efendants are not the Holder [of the note] in due course" (Compl. ¶ 78), in violation of 13 Pa. Cons. Stat. § 3301. The Penningtons argue Wells Fargo's refusal of their tender of payment implies that Wells Fargo was never the holder of the note or the authorized agent of the true note holder. (Compl. ¶ 81.) Accordingly, the Penningtons ask that the court subpoena the original note to determine the true holder. (Compl. ¶ 81.)

While the Penningtons claim that Wells Fargo is not the true holder of the note, they offer no facts in their complaint to support this argument. The Penningtons' only argument in support of their conclusion that Wells Fargo is not the holder of the note is that because Wells Fargo did not accept the tender of payment from the Penningtons, Wells Fargo must not be the note holder. This inference is too far of a stretch to meet the standard of plausibility for a complaint. Moreover, at oral argument counsel for Wells Fargo stated that the original note was in her possession and located at her office in King of Prussia, PA. She offered to allow the Penningtons to view the original note as early as the following morning. They refused the offer. In addition, Mr. Pennington conceded that his wife had received a copy of the note at settlement. These facts leave no doubt that Wells Fargo is the true holder of the note. Therefore, count VI is dismissed with prejudice.

---

Stat. § 3603(c), if an obligor under a note tenders payment to the enforcer of the note, "the obligation of the obligor to pay interest after the due date on the amount tendered is discharged." 13 Pa. Cons. Stat. § 3603(c). The Penningtons, however, did not state this claim in their complaint.

### G.        Penningtons' Request to Amend the Complaint and Bifurcate the Trial

The Penningtons seek to bifurcate their prayer for quiet title, sought in count I, from the remainder of their claims seeking monetary damages.  (Pls.' Opp'n to Mot. to Dismiss ¶ 17.)  In addition, they request an opportunity to amend their complaint.  (*Id.*)

A court may order separate trials of issues or claims for "convenience, to avoid prejudice, or to expedite and economize . . . ."  Fed. R. Civ. P. 42(b).  "The party seeking bifurcation has the burden of showing that bifurcation is proper in light of the general principle that a single trial tends to lessen the delay, expense[,] and inconvenience to all parties."  *McCrae v. Pittsburgh Corning Co.*, 97 F.R.D. 490, 492, (E.D. Pa. 1983).  A district court is "given broad discretion in reaching its decision whether to separate the issues of liability and damages.*"  Idzojtic v. Pa. R.R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972).

Here, the Penningtons have failed to show how bifurcation would be more convenient or economical for the court.  Furthermore, bifurcation is typically granted to separate issues of liability and damages; here, the Penningtons seek to bifurcate equitable relief from monetary relief, a division that is unnecessary.  Accordingly, their request is denied.  Moreover, because all of the claims other than the action to quiet title have now been dismissed with prejudice, the request for bifurcation is moot.

Normally, I must grant leave to amend provided that amendment would not be inequitable or futile.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) ("[I]f a complaint is subject to a Rule 12(b)(6) motion, a district court must permit a curative amendment unless such an amendment would be inequitable or futile.").  As explained above, the facts drawn out at oral argument leave me no doubt that any amendment to this complaint would be both

14

futile and frivolous.  Therefore, the Penningtons' request for leave to amend is denied.

## IV.   CONCLUSION

For the foregoing reasons, I will dismiss counts I through VI, inclusive, with prejudice. The only claim that survives is the Penningtons' claim for quiet title.  An appropriate order accompanies this memorandum.