IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NIKKI PENNINGTON, | : |
| Plaintiff/Counterdefendant | : |
| v. | : |
| WELLS FARGO BANK, N.A. *SUCCESSOR TO WELLS FARGO HOME MORTGAGE* | : CIVIL ACTION<br>: NO. 11cv2896 |
| Defendant/Counterclaimant | : |
| v. | : |
| JEFFREY PENNINGTON | : |
| Counterdefendant. | : |

**MEMORANDUM**

YOHN, J.                                                                                                                                     September 3, 2013

This action arises out of a title dispute to real property located at 4711 Greene Street in Philadelphia, Pennsylvania, between Nikki and Jeffrey Pennington (the "Penningtons") and Wells Fargo Bank, N.A. ("Wells Fargo"). Currently before me is a motion for summary judgment by defendant/counterclaimant Wells Fargo, to which the Penningtons have not filed a response. For the following reasons, I will grant Wells Fargo's motion for summary judgment and enter judgment in its favor and against the Penningtons, thus bringing this matter to a close.

**I.     FACT BACKGROUND AND PROCEDURAL HISTORY**

As this is the fourth opinion I have issued in this matter in less than one year, the parties are very familiar with the facts of this case. Nevertheless, because this is a motion for summary judgment, I will briefly recap the relevant facts here.

On June 23, 2005, Nikki Pennington—at that time Nikki T. Frazier—accepted a loan from Wells Fargo Bank in the amount of $147,250.00 that she used to purchase real property at 4711 Greene Street, Philadelphia, Pennsylvania 19144 (the "Property"). (Def./Countercl.'s Mot. Summ. J., Ex. 1, at 1.) In return for the loan, Nikki Pennington executed and delivered to Wells Fargo a promissory note (the "Note"), whereby she agreed to repay the loan at an annual interest rate of 5.75%. (*Id.*) The Note called for repayment of the principal, plus interest, over thirty years, with a monthly payment of $859.31. (*Id.*) As security for her obligations under the Note, she executed and delivered to Wells Fargo a mortgage (the "Mortgage"), which gave Wells Fargo an interest in the Property. (*Id.*, Ex. 2.)

On November 1, 2010, Nikki Pennington executed a quitclaim deed that transferred the Property out of her name (then Nikki T. Frazier-Pennington), and into the names of Nikki Pennington and Jeffrey Pennington, her husband. (Compl. Ex. 7.) On December 1, 2010, Nikki Pennington failed to make her required monthly payment on the Mortgage, and has failed to make every payment on her Mortgage thereafter. (Def./Countercl.'s Concise Statement of Material Facts Not Subj. to Dispute in Supp. of its Mot. Summ. J. ("Def.'s Undisputed Facts") ¶¶ 16-17; Order, Oct. 17, 2012, ECF No. 46.) Wells Fargo notified Nikki Pennington of her default under the Note and Mortgage, and on February 7, 2011, mailed Nikki Pennington a combined notice under the Homeowner's Emergency Mortgage Assistance Act ("Act 91"), 35 Pa. Stat. Ann. §§ 1680.401c *et seq.*, and the Loan Interest Protection Law ("Act 6"), 41 Pa. Stat. Ann. §§ 101 *et seq.*, which was sent to the Property. (Mem. of Law in Supp. of Mot. Summ. J. 7; Mot. Summ. J., Ex. 3.) Similarly, because Jeffrey Pennington had an interest in the Property via the quitclaim deed, on July 26, 2011, Wells Fargo sent him a combined notice of default pursuant to

2

Act 6 and Act 91. (Mem. of Law in Supp. of Mot. Summ. J. 8; Mot. Summ. J., Ex. 5.) Jeffrey Pennington refused to accept the combined notice, which was sent via certified mail. (Mot. Summ. J. Ex. 5; *Id.*, Aff. of Beverly DeCaro, Ex. 1, at ¶ 25.)

On March 25, 2011, the Penningtons filed a complaint in the Court of Common Pleas for Philadelphia County, alleging a host of various Pennsylvania and federal law violations against Wells Fargo, for which they sought monetary damages. (Compl. 5-16.) The complaint also included an action to quiet title of the Property against Wells Fargo. (*Id*. at 3.) On April 29, 2011, Wells Fargo removed this case to the U.S. District Court for the Eastern District of Pennsylvania. (Notice of Removal, April 29, 2011, ECF No. 1.) This case was reassigned to me from the docket of the late Honorable Louis H. Pollak on May 16, 2012. (Order, May 16, 2012, ECF No. 40.) On October 16, 2012, I held a hearing regarding Wells Fargo's motion to dismiss the Penningtons' complaint. At the conclusion of the hearing, I dismissed Jeffrey Pennington from the action because his name did not appear on the Mortgage or Note. (Order, Oct. 17, 2012, ECF No. 46.) Three days later, by separate memorandum and order, I dismissed the rest of the Penningtons' claims against Wells Fargo except for their claim for quiet title, as Wells Fargo had made no motion to dismiss that claim. (Order, Oct. 19, 2012, ECF No. 48.)

Wells Fargo filed an answer with respect to the remaining claim for quiet title, and additionally filed a counterclaim for breach of contract against Nikki Pennington and a counterclaim for in rem mortgage foreclosure against both Nikki and Jeffrey Pennington. (Ans. of Def., Jan. 29, 2013, ECF No. 60.) Because its mortgage foreclosure counterclaim was filed against Nikki Pennington *and* Jeffrey Pennington, who had been dismissed from the action, Wells Fargo filed a joinder complaint, thus bringing Jeffrey Pennington back into these

3

proceedings. (Def.'s Joinder Compl., Jan. 31, 2013, ECF No. 61.) On March 25, 2013, after prodding by the court, the Penningtons filed an answer to Wells Fargo's counterclaims, including counterclaims against Wells Fargo.[1] (Aff. of Negative Averment, Opportunity to Cure, and Countercl., Mar. 25, 2013, ECF No. 73.) On May 30, 2013, I dismissed the Penningtons' counterclaims against Wells Fargo. Thus, only Wells Fargo's counterclaims for breach of contract and in rem mortgage foreclosure, and Nikki Pennington's claim for quiet title, remain. On June 19, 2013, Wells Fargo filed the instant motion for summary judgment, to which the Penningtons did not respond. As a result, I sent letters to both Nikki and Jeffrey Pennington, informing them that Wells Fargo had filed a motion for summary judgment in the case, and that without a response, I could consider Wells Fargo's assertion of facts as undisputed, and enter judgment against the Penningtons if the undisputed facts showed that Wells Fargo was entitled to judgment as a matter of law. (Def.'s Mot. Summ. J., June 19, 2013, ECF No. 90; Not. to Nikki Pennington that Resp. to Mot. Summ. J. Must Be Filed, July 19, 2013, ECF No. 92; Not. to Nikki Pennington that Resp. to Mot. Summ. J. Must Be Filed, July 26, 2013, ECF No. 94.) The letters stated that a response was due by August 5, 2013. Neither Pennington has yet responded.

---

[1] The Penningtons' answer to Wells Fargo's counterclaims is titled, "Affidavit of Negative Averment, Opportunity to Cure, and Counterclaim," and was docketed as such. Within that document, there is only a brief mention of an answer with regard to Wells Fargo's counterclaims; the majority of the document lists counterclaims that the Penningtons allege against Wells Fargo. (Aff. of Negative Averment, Opportunity to Cure, and Countercl., Mar. 25, 2013, ECF No. 73, at 3-4.) Accordingly, I entered default against Nikki Pennington and in favor of Wells Fargo with regard to its counterclaims because of her failure to respond. (Order, April 16, 2013, ECF No. 75.) Though she has not challenged the entry of default against her, I acknowledge that, however slight, she did file an answer with respect to Wells Fargo's counterclaims. Therefore, in the interest of finality of judgment and bringing this matter to a close, I will also evaluate Wells Fargo's counterclaims under the summary judgment standard—under which it also prevails.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Roth v. Norfalco LLC*, 651 F.3d 367, 373 (3d Cir. 2011) (internal quotation marks omitted). To establish that there is, or is not, a genuine dispute as to any material fact, a party may rely on "depositions, documents, electronically stored information, affidavits or declarations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In sum, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## III. DISCUSSION

In its motion for summary judgment, Wells Fargo argues that it is entitled to judgment as a matter of law with respect to Nikki Pennington's claim for quiet title, as well as its counterclaims for breach of contract against Nikki Pennington and in rem mortgage foreclosure against the Penningtons, because the record is devoid of any genuine dispute of material fact with respect to any of the claims. I agree.

A. **Quiet Title**

Under the Rules of Civil Procedure for the Commonwealth of Pennsylvania, an action to quiet title may be brought "to compel an adverse party to . . . admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land . . . ." Pa. R.C.P. No. 1061(b)(3). Nikki Pennington's claim that Wells Fargo's interest in the Property is invalid is premised upon her allegations that Wells Fargo is not the original holder of the Note and that there was a rescission of the Mortgage because of Wells Fargo's refusal of the Penningtons' tender of payment. (Compl. ¶¶ 6,8.) Not only are these allegations unsubstantiated by any evidence in the record, but I determined at a hearing on October 16, 2012, that the claim for a rescission of the Mortgage was meritless, and that the Penningtons neither made any plausible factual allegations, nor presented any evidence, that would support a claim that Wells Fargo was not the original holder of the Note. (Order, October 17, 2012, ECF No. 46.) In fact, Wells Fargo has made repeated offers to allow both Nikki and Jeffrey Pennington to view the original Note and Mortgage, which the Penningtons have declined. (*Id.*)

"In Pennsylvania a mortgage duly executed will be presumed to be valid until the contrary is shown, and the burden is on the party attacking the mortgage to prove its invalidity." *Pitti v. Pocono Bus. Furniture, Inc.*, 859 A.2d 523, 526 n.3 (Pa. Commw. Ct. 2004). Nikki Pennington has not provided the court with anything other than unsupported conclusory allegations asserting the invalidity of the Mortgage and Note—the Mortgage and Note she has previously admitted to executing on June 23, 2005, with Wells Fargo. (Order, Oct. 17, 2012, ECF No. 46.) Accordingly, because there is no genuine dispute of material fact with respect to Wells Fargo being the holder of the Note and Mortgage, summary judgment in favor of Wells Fargo as to

Nikki Pennington's claim for quiet title is appropriate.

**B.     Breach of Contract[2]**

In its first counterclaim, Wells Fargo alleges a breach of contract against Nikki Pennington for her failure to make payments under the terms of the Note. "Pennsylvania law requires that a [party] seeking to proceed with a breach of contract action must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 226 (3d Cir. 2003) (quoting *CoreStatesBank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

---

[2]"An action in mortgage foreclosure is strictly an *in rem* action and may not include an *in personam* action to enforce personal liability." *Insilco Corp. v. Rayburn*, 543 A.2d 120, 123 (Pa. Super. Ct. 1988). This is because "[t]he sole purpose of a judgment obtained through mortgage foreclosure is to effect a judicial sale of the mortgaged real estate . . . ." *Id*. (internal citation omitted). Nevertheless, the Superior Court of Pennsylvania has held:

> [W]here a mortgagee fails to follow Pa.R.C.P. 1141 and includes in a mortgage foreclosure complaint a request not only for an *in rem* judgment of foreclosure on the mortgaged property but also an *in personam* judgment against the individuals who executed the mortgage for their personal liability on the note or bond accompanying the mortgage, the judgment in mortgage foreclosure can be both *in rem* and *in personam* provided that the mortgagor waives any objection to the inclusion of the assumpsit action for a personal judgment in the mortgage foreclosure proceeding.

*Id*.; *see also Crestar Mortg. Corp. v. Peoples Mortg. Co., Inc.*, 818 F. Supp. 816, 820 n.5 (E.D. Pa. 1993) ("[A] deficiency judgment can be assessed in a mortgage foreclosure action when the mortgagee's complaint in mortgage foreclosure requests both an in rem judgment and an in personam judgment and no objection is made thereto by the mortgagor(s).").

In its counterclaims, Wells Fargo brings both an in personam breach of contract action against Nikki Pennington and an in rem mortgage foreclosure action against both Nikki and Jeffrey Pennington. In the answer to Wells Fargo's counterclaims, Nikki Pennington did not object to the inclusion of the in personam breach of contract action along with the in rem mortgage foreclosure action. Because the Penningtons have not filed a response to Wells Fargo's motion for summary judgment, there continues to be no objection to the inclusion of an in personam action with an in rem action. Thus, I conclude that any such objection has been waived, and the inclusion of an in personam action with an in rem action is proper in this instance.

Here, Nikki Pennington has admitted to signing the Mortgage and Note with Wells Fargo on June 23, 2005, in the amount of $147,250.00; thus a valid contract exists. (Order, Oct. 17, 2012, ECF No. 46.) The essential terms of the Note state that Nikki Pennington is to make monthly payments in the amount of $859.31 for a period of thirty years. (Def.'s Undisputed Facts, Ex.1, at 1.) The Note further provides that, if she should fail to make a monthly payment, Wells Fargo may impose a late charge equal to 5% of the overdue payment. (*Id*., Ex. 1. at 2.) Nikki Pennington admits that she has not made a monthly payment on the Mortgage since December 2010; accordingly, she is in breach of contract. (Order, Oct. 17, 2012, ECF No. 46.) The total resultant damage to Wells Fargo, through May 22, 2013, is $162, 844.60 which includes principal, interest, late charges, and an outstanding escrow balance.[3] (Def.'s Undisputed Facts 7.) Therefore, because there is no genuine issue of material fact with respect to Wells Fargo's counterclaim for breach of contract against Nikki Pennington, summary judgment in favor of Wells Fargo is appropriate.

C. **In Rem Mortgage Foreclosure**

In its second counterclaim, Wells Fargo brings a claim for in rem mortgage foreclosure against both Nikki and Jeffrey Pennington. "In a mortgage foreclosure action, the [party bringing the action] must show the existence of an obligation secured by a mortgage, and a default on that obligation." *JPMorgan Chase Bank, Nat'l Assn. v. Olbrys*, No. 12-cv-0052, 2013 WL 3367643, at *1 (M.D. Pa. July 3, 2013) (quoting *Chemical Bank v. Dippolito*, 897 F. Supp. 221, 224 (E.D. Pa. 1995)) (internal quotation marks omitted). "Summary judgment is properly granted in

---

[3]Wells Fargo has elected not to seek attorneys' fees and collection costs. Furthermore, the resultant damages only reflect the amount owed through May 22, 2013; interest continues to accrue on the unpaid principal of the Note at a rate of $21.29 per day.

mortgage foreclosure actions where the mortgagor admits that he is delinquent in mortgage payments." *Id*. (quoting *First Wis. Trust Co. v. Strausser*, 653 A.2d 688, 692 (Pa. Super. Ct. 1995)) (internal quotation marks omitted).

As stated above, there is no genuine dispute of material fact with respect to Nikki Pennington's obligation under the Note and Mortgage and the subsequent default on her monthly payments. Additionally, any interest Jeffrey Pennington has in the Property is subject to the existing Mortgage, a risk he assumed by taking title to the Property via a quitclaim deed after the Mortgage had been executed and recorded. *See In re Le-Nature's Inc.*, No. 10-304, 2010 WL 2573901, at *7-8 (W.D. Pa. June 23, 2010) (affirming bankruptcy court ruling that buyer took property subject to existing mortgage when title was transferred via quitclaim deed); *see also Greek Catholic Congregation of Borough of Olyphant v. Plummer*, 32 A.2d 299, 300 (Pa. 1943) ("One who receives by a quit-claim deed to a property must proceed with caution if he seeks to possess himself of that property. By securing a quit-claim deed he has eliminated only one person who might bar his ingress to that property. A quit-claim deed contains no covenant of peaceful possession."). Accordingly, because the Penningtons have stipulated on the record that they have not made a mortgage payment since December 2010, (Order, Oct. 17, 2012, ECF No. 46), there is no genuine dispute of material fact with respect to Wells Fargo's claim for in rem mortgage foreclosure, and it is thus entitled to judgment as a matter of law.

IV. **CONCLUSION**

For the foregoing reasons, Wells Fargo's motion for summary judgment will be granted. An appropriate order follows.